### 63812. ROBINSON v. STEVENS INDUSTRIES, INC.

DEEN, Presiding Judge.

The only issue for decision is whether a jury question exists as to the value of 171,514 pounds of peanuts delivered by Robinson, the grower, during the latter part of 1980 to Boston Farm Center, Inc. (herein BFC), agent of the defendant Stevens Industries. Summary judgment was granted in favor of the latter as to Count I of the complaint and plaintiff appeals. Count II, which was not attacked, is based on an admitted indebtedness of $34,805.34, the amount the peanuts would have brought at federal support prices.

However, by January 1981, when the plaintiff went to collect his checks, the market price had risen substantially above the support price, and Robinson is seeking $132,488.56, the total as computed at the then market price.

Attached to the defendant's motion for summary judgment on Count I was the affidavit of the president of BFC to the effect that its authority from the defendant was only to buy peanuts for that entity, and only at the government support price without premium; that it opened a purchasing point in 1975 in Brooks County, Ga., and has

operated it continuously since then; that from 1975 on it purchased the peanuts raised by the plaintiff; that it was at all times the custom of plaintiff to either send wagon loads of peanuts to BFC or to request pickup by BFC at his farm; that plaintiff never inquired as to the sale price; that in 1980 BFC was operating only for Stevens Industries; that when a load was received a receipt was given within 24 hours, and the prevailing price was always the prevailing price on the date of delivery. BFC prepared and delivered at that time a form MQ-94 prepared by the U. S. Department of Agriculture, showing *seller, buyer, date,* etc. These constituted a sale under federal price control regulations as of date of delivery because, if stored, they would have had to be reweighed and regraded at the time of sale, and it was incumbent on the plaintiff within 24 hours of grading to designate the load (for purposes of receipt of government benefits) as "quota," "additional loan" or "contract additional." Plaintiff did not designate, and his peanuts were accordingly marked "quota," although it is observed that in 1980 BFC purchased for the defendant only, plaintiff had entered into a written contract to sell to the defendant, and his total peanut volume did not exceed his quota.

In 1980 plaintiff followed his usual course of delivering peanuts to BFC and not requesting payment until January of the following year. In January he requested and received payment for a load of peanuts. This was made at the government support price on the date of delivery. Thereafter he demanded payment for the remaining peanuts at the then market price which, for the first time since 1975, had risen substantially above the market support price. Thus, defendant contends that the sale took place on delivery at the quota market support price in accordance with federal regulations and in accordance with the custom of the parties at all dates during and subsequent to 1975. The plaintiff denies this, insists that the peanuts were deposited for storage and sold at the time he requested a check, and he also testified that in December, 1980, he had instructed BFC to mark his card "peanuts stored," although this was over two months after the peanuts were in fact received and, under the defendant's position, sold.

Thus, it is clear that there was no express contract specifying that the transactions of 1980 or before were to be consummated only at quota market support price, but it is also clear that the support price continued to be the same as market price until some time after the 1980 deliveries. We must ask whether, in the face of the plaintiff's express denial, it can be held as a matter of law that the parties were bound by the government support price on the date of delivery.

Code § 109A-2—305 provides: "(1) The parties if they so intend

can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time of delivery if (a) nothing is said as to price; or (b) the price is left to be agreed by the parties and they fail to agree or (c) . . . (4) Where, however the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract. In such a case the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery . . ."

For this Commercial Code statute to apply in any of its alternatives to the case at bar it is necessary for both parties to *intend a sale.* Here, neither party denies that an ultimate sale was intended. The defendant, relying on the preparation of the MQ-94 form (which, however, was held and not given to the plaintiff at the time of delivery), the six-year course of conduct, and the regulations of the Department of Agriculture, contends that such sale of necessity occurred at the time of delivery of each load of peanuts. The plaintiff contends that his understanding, corroborated by the course of events of previous transactions, was that defendant would hold the peanuts until such time as he requested payment, and the sale would be concluded on that date at the best price available.

It is undisputed that the parties intended a contract of sale of peanuts, and that there was no express agreement as to price. Under such circumstances it must be held that the Commercial Code stipulates a reasonable price *at the time of delivery.* See American Sand & Gravel, Inc. v. Clark and Fray Const. Co., (Conn. 1963) 198 A2d 68. This interpretation is reinforced by the fact that had the plaintiff intended the peanuts to be stored and sold at a later time there would have been an agreement either as to storage charges or as to length of time storage might be effected without charge. No such evidence appears to this effect; in fact, the appellant testified to the contrary. It is also indicative of the intent of the parties that at the time the plaintiff raised the question of price he had already accepted a check for two loads of peanuts delivered in 1980 in an amount controlled by the federal support price; that is, price on date of delivery.

No substantial issue of fact remains to be determined. Code § 81A-156 (c); *Mathews v. Cleveland,* 144 Ga. App. 423 (2) (241 SE2d 286) (1977). No error appears in the grant of summary judgment to the defendant.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED APRIL 15, 1982.

*James C. Whelchel,* for appellant.

*Jesse G. Bowles, James M. Collier,* for appellee.